IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL DAVID JOHNSON,<br><br>    Petitioner,<br><br>  v.<br><br>D. L. RUNNELS, Warden,<br><br>    Respondent.                        / | No. C 04-05072 CRB (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

Paul David Johnson ("petitioner") is a state prisoner incarcerated at Pelican Bay State Prison. He seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming denial of his right to a speedy trial, insufficient evidence to support his conviction, and ineffective assistance of trial and appellate counsel.

## STATEMENT OF THE CASE

An information was filed in Alameda County Superior Court on February 18, 1999, accusing petitioner of rape, kidnapping and robbery, and charging enhancements for kidnapping (as to the rape count), personal use of a deadly weapon, and two prior prison terms. On March 6, 2003, petitioner was convicted by a jury on all counts. The jury also found that all of the special allegations were true. Petitioner was sentenced to 43 years to life on May 15, 2000. Petitioner immediately appealed his conviction to the California Court of Appeal, which affirmed the judgment in a reasoned opinion filed August 17, 2001. On October 31, 2001, the California Supreme Court denied a petition for review.

Having exhausted his direct appeals, petitioner filed habeas petitions in the California Supreme Court on May 27, 2003 and January 12, 2004, which were summarily denied on November 12, 2003 and November 10, 2004, respectively.

A petition for a writ of habeas corpus was filed in this court on November 30, 2004. The court concluded that the petition, when liberally construed, stated a cognizable claim for relief under section 2254, and on March 2, 2005 issued an order to show cause why the petition should not be granted. Respondent filed an answer and supporting memorandum on July 25 and 26, 2005. Petitioner filed a traverse on September 26, 2005 and what the court will treat as an amended traverse on October 17, 2005. There are no substantive differences between the two traverses.

## **FACTUAL BACKGROUND**

The principal facts, as summarized by the California Court of Appeal following its review of the trial court record, are as follows:

> The rape of 16-year-old Jermila M. occurred sometime around midnight on December 15-16, 1998. Jermila was walking home from a store when she was accosted by defendant. Defendant placed a knife at her back and led her to the nearby grounds of Prescott School. There he stole some of her jewelry and raped her. Jermila resisted, cutting her fingers and palm on defendant's knife.
> During the assault Jermila noticed defendant was making strange faces and talking in a soft voice. His lips were quivering and he appeared to be smirking or grinning.
> After the assault Jermila ran to the home she shared with her boyfriend and his father. Jermila described her assailant to her boyfriend, who thought he recognized defendant from Jermila's description. The boyfriend took Jermila out to look for her attacker and they eventually located defendant's house. The boyfriend summoned defendant to the door, and Jermila identified him and accused him of raping her. Defendant denied the accusation.
> Jermila reported the crime to the police and accompanied them back to Prescott School. There the police found evidence, including Jermila's blood, supporting her account of the crime. The police also showed Jermila a photo lineup from which she picked defendant's photograph.
> A physician's assistant trained to conduct sexual assault examinations found injuries consistent with forced intercourse. He also noted cuts on Jermila's right hand. He collected specimens from Jermila's vagina and her neck. DNA analysis of the specimens revealed a match with defendant's DNA with near certainty.
> The police arrested defendant at his home. They did not recover the items stolen from Jermila. The police did find and seize two kitchen knives in defendant's room, though the knives apparently were not used to commit the crime. During a taped interview with the police, defendant denied he had ever seen Jermila before, let alone raped her. At trial, however, defendant testified he had known Jermila for about four years. He claimed that on December 14, 1998, he paid Jermila for oral sex and after he ejaculated in her mouth, she rubbed semen on her vagina. When questioned about the conflicting account he gave to the police, defendant explained

2

he was under the influence of drugs when the police interviewed him; therefore, he
        did not know what he was saying.

People v. Johnson, No. A091268, slip op. at 1-2 (Cal. Ct. App. Aug. 17, 2001) (Ex. C attached to Answer).  Additional facts relevant to specific claims will be discussed in the appropriate sections below.

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus on "behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a).  A writ may only be granted with respect to such a person if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

3

1    The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (not the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Williams, 529 U.S. at 412.

## CLAIMS AND ANALYSIS

Petitioner raises four claims for relief: (1) denial of his right to a speedy trial, (2) insufficiency of the evidence, (3) ineffective assistance of trial counsel, and (4) ineffective assistance of appellate counsel.

I.    **Speedy Trial**

Petitioner claims he was denied his constitutional right to a speedy trial by a delay of eleven months between the filing of the information against him and the beginning of his trial. His claim is without merit.[1]

A.    Background

In this case, the information against petitioner was filed in February 1999. Trial preparation followed, and the case was continued several times during the following eight months. Pretrial motions began on November 1, 1999, and jury selection was set to begin on November 3. On that day, however, the public defender discovered a potential conflict of interest and received the court's permission to investigate further. On the 4th, he formally requested permission to withdraw as counsel because a conflict existed such that continued representation would be a violation of the rules of professional conduct. (See Court's

---

[1] In addition to asserting a constitutional violation, petitioner invokes both federal and California speedy trial statutes. However, no challenge based upon those laws is cognizable in a federal habeas proceeding under 28 U.S.C. § 2254. The federal speedy trial act was not applicable to petitioner's trial in state court, see 18 U.S.C. § 3161(b) (Speedy Trial Act only triggered by a "federal arrest"); United States v. Benitez, 34 F.3d 1489, 1493 (9th Cir. 1983) (no federal arrest where defendant was not charged with a federal crime), and a violation of a state procedural rule does not constitute a violation of the "constitution, laws, or treaties of the United States" so as to raise an issue upon which habeas relief can be granted, see 28 U.S.C. § 2254.

Findings of Facts Re: Setting of Trial Date Beyond Statutory 60 Day Period, People v. Johnson, No. 134930 (Super. Ct. Nov. 15, 1999) (Ex. S attached to Pet.).)

The court contacted the Alameda County Bar Association's Court Appointed Attorney Panel, and a private attorney named Robert Platt appeared on November 8th to take over as petitioner's attorney. Id. Mr. Platt agreed to accept the representation, but only if the court would give him until January 1st to prepare for trial. The court and the prosecution were prepared to accept this delay, in view of the complexity and seriousness of the case and the preparation that would be required. Petitioner, however, refused to waive time. Id. The court again contacted the county bar, and another attorney appeared on November 9th. This attorney, Lorna Brown, also agreed to take on the representation, but again on the condition that she be allowed extra time to prepare. Again petitioner refused to waive time, declaring, "I'm ready to go to trial." Id.

The court proceeded to explain to petitioner (on the record and at considerable length) the legitimate and time-consuming necessity of preparing for trial. The court detailed Ms. Brown's qualifications and stated its own opinion on the basis of twenty years of trial experience that no competent lawyer could be ready to try this case without an extension of time. Petitioner, however, stood firm. Ultimately the court granted a continuance over petitioner's objection and set the case for trial on January 18, 2000. Id. At each stage, the prosecutor underlined that the state stood ready to proceed to trial. Id.

B.   Analysis

A speedy trial is a fundamental right guaranteed by the Sixth Amendment and imposed upon the states by the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 223 (1967). This constitutional guarantee is governed by a flexible four-factor analysis. A court considering a constitutional challenge to the timeliness of a criminal trial must analyze: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice occasioned by the delay. Doggett v. United States, 505 U.S. 647, 651 (1992); Barker v. Wingo, 407 U.S. 514,

5

1   530 (1972).  No single factor is controlling; rather, all must be considered together with any
2   other relevant circumstances.  Barker, 407 U.S. at 533.

### 1. Length of Delay Triggers Sixth Amendment Inquiry

Although no single factor is normally controlling, the length of delay in a constitutional speedy trial challenge is to some degree a "triggering factor."  Only if substantial delay is found must a court proceed to weigh the length of that delay together with the other factors.  Doggett, 505 U.S. at 651-52.  A finding that a given delay is "presumptively prejudicial" places a burden on the government to explain the delay in terms of the other factors, but does not necessarily weigh towards a finding of actual prejudice.  McNeely v. Blanas, 336 F.3d 822, 827 (9th Cir. 2003).

Courts have generally held that the inquiry is triggered when post-indictment (or, as in this case, post-information) delay approaches a year.  See, e.g., Doggett, 505 U.S. at 652 n.1 (finding presumptive prejudice in case of eight-and-one-half month delay); McNeely, 336 F.3d at 826 (holding a three-year delay presumptively prejudicial); United States v. Gregory, 322 F.3d 1157, 1162 (9th Cir. 2003) (explaining that while a twenty-two month delay was presumptively prejudicial, it did not weigh heavily in defendant's favor because it was not excessively long); United States v. Lam, 251 F.3d 852, 856 (9th Cir. 2001) (describing a six month delay as a "borderline case").

The delay at issue here was eleven months.  This duration is sufficient to trigger the rest of the analysis, but it does not weigh heavily towards finding that petitioner was denied a constitutional right.

### 2. Neither Defendant Nor Prosecution Is At Fault For Delay

The usual formulation of the analysis under the second Barker prong is that the court must consider whether petitioner or the prosecution is more to blame for the delay.  Doggett, 505 U.S. at 651.  Compare United States v. Sandoval, 990 F.2d 481, 485 (9th Cir. 1993) (defendants' resistance to the government's efforts to secure their presence in the United States for trial constituted relinquishment of the speedy trial right) and McNeely, 336 F.3d at 827 (delay attributable to defendant's own acts or to tactical decisions by trial counsel will

6

not support later claim of constitutional deprivation) with Gregory, 322 F.3d at 1162 (negligence on the government's part weighs in defendant's favor; intentional delay even more so).

Here, neither the prosecution nor the petitioner is responsible for the delay. Petitioner announced his own readiness to proceed with trial on November 3rd, and the assistant district attorney represented at each stage of the proceedings that the state was prepared to go forward.

Under some circumstances, delay occasioned by defense counsel's tactics can be attributed to a defendant for purposes of this prong. See Lam, 251 F.3d at 857-58 (defense counsel's actions attributable to defendant on general principal-agent analysis); see also United States v. Shetty, 130 F.3d 1324, 1330-31 (9th Cir. 1997) (delay attributable to defendant where defense counsel stipulated to continuances). In this case, however, defense counsel's request for time to prepare is not attributable to petitioner, because that request was made as a condition of accepting the representation and prior to the formation of any agency relationship between petitioner and his counsel. See Restatement (Third) of Agency § 8.01 cmt. c (agent's duty to principal generally begins with the formation of the relationship); Gann v. Williams Bros. Realty, 231 Cal. App. 3d 1698, 1706 (1991) (no principal-agent duty could have arisen "unless and until" conditions precedent to forming the relationship were fulfilled).

Because neither petitioner nor the prosecution was at fault for the delay in this case, this factor weighs neither for nor against a finding that petitioner's speedy trial right was impaired.

### 3.  **Timely Assertion of the Speedy Trial Right**

A defendant's assertion of his speedy trial right is "entitled to strong evidentiary weight in determining whether the defendant [was] deprived of the right." Barker, 407 U.S. at 531-32. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. Assertions of the speedy trial right must be viewed in light of the defendant's other conduct. United States v. Loud Hawk, 474 U.S. 302, 314 (1986)

7

(finding that repeated assertions of the right were contradicted by other tactics which caused delay).

Here petitioner unquestionably asserted his right to a speedy trial in November 1999, which was nine months following the filing of the information against him, but only two months prior to the start of his trial. Petitioner points out that he was not in the courtroom when the public defender agreed to some of the earlier continuances, but the court does not infer an intention to assert the speedy trial right from that circumstance.

Petitioner's assertion of his speedy trial right is not mitigated by his counsel's contradictory request for a continuance, for the same reason that counsel's requests do not place responsibility for the delay on petitioner--the attorney was not yet his agent when this request was made. Nevertheless, petitioner's assertion of his speedy trial right in November 1999, just two months before his trial actually began, weighs only modestly towards a finding of prejudice.

### 4. **The Nature and Degree of Prejudice**

Three types of potential prejudice are recognized under the fourth prong of the Barker analysis: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, (3) the possibility that the accused's defense will be impaired. Gregory, 322 F.3d at 1163. The third type of prejudice is the most serious. Barker, 407 U.S. at 532.

Petitioner asserts that his defense was prejudiced because the complaining witness ran away from home and was absent at the time his trial was originally scheduled to begin. According to petitioner, had trial begun when originally scheduled, the prosecution's chief witness would have been unavailable. Even under the assumption that Jermila would not have made herself available to testify at that time, a fleeting opportunity to exploit a logistical vulnerability in the prosecution's case, depriving the trial court of crucial evidence, cannot be the interest sought to be protected by the Sixth Amendment's guarantee of a speedy and fair trial. See Barker, 407 U.S. at 532 (prejudice "should be assessed in light of the interests of defendant which the speedy trial right was designed to protect); Gregory, 322 F.3d at 1163 (rejecting contention that speedy trial right was prejudiced where a superseding indictment

8

adding new money laundering charges was obtained following defendant's guilty plea to related narcotics charges).

Petitioner's pre-trial incarceration was undoubtedly oppressive, but he has made no showing that it was especially so as compared to other conditions of confinement. Similarly, the court takes petitioner at his word that anticipation of his trial caused him anxiety and concern, but the degree of anxiety must be evaluated in light of the relatively modest delay at issue here.

Petitioner has asserted a claim of limited prejudice in the sense of anxiety and oppressive pre-trial incarceration, but he has failed to assert any cognizable impairment of his ability to put on a defense.

In sum, a relatively modest delay in petitioner's trial was occasioned by a combination of two factors: (1) the unfortunate circumstance of counsel's discovery of a conflict on the eve of trial, and (2) the trial judge's desire to assure petitioner competent and well-prepared trial counsel. Compelled to balance two important rights springing from the same Amendment--petitioner's right to a speedy trial and his right to effective assistance of counsel--the trial judge made a reasonable decision.

Petitioner is not entitled to federal habeas relief on his speedy trial claim. It simply cannot be said that the state court's summary denial of petitioner's claim amounted to an objectively unreasonable application of Barker and Doggett. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 412-13.

II. **Insufficient Evidence**

Petitioner claims that his convictions for forcible rape, robbery, and kidnapping were not supported by sufficient evidence. The claim is without merit.

The relevant inquiry on review of a constitutional challenge to the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The reviewing court "faced with a record of historical facts that supports conflicting

1 inferences must presum--even if it does not affirmatively appear on the record--that the trier
2 of fact resolved any such conflicts in favor of the prosecution, and must defer to that
3 resolution." Id. at 326.

4      In light of 28 U.S.C. § 2254(d), a federal habeas court applies the standard of Jackson
5 with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).
6 A federal habeas court must ask whether the operative state court decision reflected an
7 unreasonable application of Jackson to the facts of the case. Id. at 1275. A writ may be
8 granted only if the state court's application of the Jackson standard was "'objectively
9 unreasonable.'" Id. at 1275 n.13 (quoting Williams, 529 U.S. at 409).

10           A.     Forcible Rape

11      The elements of forcible rape under Section 261 of California's Penal Code are that:
12 (1) two persons engaged in an act of sexual intercourse, (2) the two persons were not
13 married, and (3) the act was accomplished by means of force, violence, duress, menace, or
14 fear of immediate and unlawful bodily injury. See CALJIC No. 10.00; Cal. Penal Code §§
15 261(a)(2), 261(a)(6), 262(a)(1), 262(a)(4); People v. Barnes, 42 Cal.3d 284, 292 (1986)
16 (setting forth elements and noting that resistance by the victim is no longer an element of the
17 offense).

18      Petitioner claims that he could not have committed the assault upon Jermila M.
19 because he was observed a few blocks away by other persons at times very near to that
20 during which the assault took place. He claims that these sightings leave no window of time
21 in which he could have assaulted the victim. However, the jury heard petitioner's testimony
22 to this effect, as well as the testimony of several alibi witnesses and the victim. The verdict
23 reflects their judgment that petitioner's account of his evening was not credible, and their
24 decision to credit Jermila's testimony instead.

25      In addition, a great deal of physical evidence indicating that petitioner accomplished
26 an act of forcible rape upon Jermila M. was adduced at trial. His DNA was found in her
27 vagina and on her neck (consistent with her testimony that he kissed her there during the
28 assault). Pelvic injuries consistent with forced intercourse were described by the examining

10

physician's assistant. The victim's hat and torn underwear were discovered at the scene by police. In addition, Jermila's account of petitioner's speech and facial expression during the assault were remarkably consistent with the testimony of another witness who testified at trial concerning other, prior sexual assaults by petitioner upon herself.

Petitioner is not entitled to federal habeas relief on this claim. In view of Jermila's testimony and the physical evidence presented at trial, it cannot be said that no rational juror could have found petitioner guilty of forcible rape beyond a reasonable doubt. See Jackson, 443 U.S. at 321. That the jury chose to believe Jermila, rather than petitioner and his alibi witnesses, is not a basis for revisiting the jury's determination on federal habeas review. See Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) (credibility conflict between defendant and sexual molestation victim not a basis for revisiting jury's determination); People of the Territory of Guam v. McGravey, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim). The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the Jackson standard. See 28 U.S.C. § 2254(d); Juan H., 408 F.3d at 1274.

    B.  Robbery

The elements of robbery are that: (1) a person had possession of some valuable property; (2) the property was taken away from that person; (3) the property was taken against the will of that person; (4) the taking was accomplished either by force or fear; and (5) the property was taken with the specific intent permanently to deprive that person of the property. See CALJIC No. 9.40; Cal. Penal Code § 211; Miller v. Superior Court, 115 Cal. App. 4th 216, 221 (2004).

In this case, the victim testified to facts supporting each element. She wore her watches and jewelry on the night of the assault; petitioner, who was armed, took them from her in a secluded place after threatening to cut her. From this testimony, a rational juror could have inferred that the victim was afraid and that items were taken with the intent to permanently deprive the victim of them. See Jackson, 443 U.S. at 321.

11

1  Petitioner is not entitled to federal habeas relief on this claim. The state courts'
2 rejection of petitioner's claim was not contrary to, and did not involve an unreasonable
3 application of, the Jackson standard. See 28 U.S.C. § 2254(d); Juan H., 408 F.3d at 1274.

        C.      Kidnapping

The elements of kidnapping are that: (1) a person was moved by the use of physical force or by any other means of instilling fear; (2) the movement of the other person was without her consent; and (3) the movement was substantial. See Cal. Penal Code § 207; People v. Majors, 33 Cal. 4th 321, 326-27 (2004).

With respect to this count, Jermila testified that petitioner threatened her, grasped her by the upper body as he moved her down the street, and physically pushed her over the fence into the schoolyard. From this testimony, a rational juror could have found petitioner guilty of kidnapping beyond a reasonable doubt. See Jackson, 443 U.S. at 321.

Petitioner is not entitled to federal habeas relief on this claim. The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the Jackson standard. See 28 U.S.C. § 2254(d); Juan H., 408 F.3d at 1274.

    III.    **Ineffective Assistance of Trial Counsel**

Petitioner claims ineffective assistance of trial counsel based on a variety of grounds. None of the grounds have merit.

Effective assistance of trial counsel is a right guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 688, 686 (1984). Claims that assistance of counsel was ineffective are evaluated in terms of whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish both that his counsel's performance was deficient and that he was prejudiced by that deficiency. Id. at 687-88, 694. Deficient performance is that which falls below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88.

1  Prejudice in this context is a "reasonable probability that, but for counsel's unprofessional
2  errors, the result of the proceeding would have been different." Id. at 694.
3      Where, as in several of the particular claims below, petitioner asserts that his counsel
4  should have made a particular motion, prejudice is only established if a petitioner can show a
5  reasonable likelihood both that the motion would have been granted and that the outcome of
6  the trial itself would have been different as a result. Wilson v. Henry, 185 F.3d 986, 990 (9th
7  Cir. 1999).

        A.        Evidence Regarding Third-Party Threats

9      Petitioner claims that his trial counsel erred in failing to object properly to testimony
10 by the victim concerning an attempt to dissuade her from appearing in court. According to
11 Jermila's testimony, petitioner's nephew offered to pay her $1500 if she refused to testify.
12 Petitioner's trial counsel, Lorna Brown, did initially object to this testimony on hearsay
13 grounds. (Reporter's Transcript, hereinafter "RT," at 1113.) The court overruled the
14 objection, but issued a limiting instruction that the testimony was to be taken only for
15 Jermila's state of mind (and hence her credibility). The prosecutor's next question elicited
16 testimony concerning a conversation between petitioner and his nephew which the nephew
17 reported to Jermila at the time of the bribe attempt. The court cut off the questioning at this
18 point, remarking that it was "getting into double hearsay." (RT at 1113.) On cross,
19 petitioner's counsel was able to establish that no explicit threat was articulated. (RT at 1213-
20 14.)
21     Petitioner raised his ineffective assistance claim on direct review. The California
22 Court of Appeal found that, as a matter of state law, Jermila's testimony concerning the
23 nephew's alleged behavior was admissible because the credibility and consistency of her
24 testimony was in issue. The court explained that "[t]hreats to a witness from a third party
25 may be admissible if relevant to the witness's credibility," and if that credibility has been
26 otherwise challenged. People v. Johnson, No. A091268 at 7-8 (citing People v. Olguin, 31
27 Cal. App. 4th 1355, 1368-69 (1994)). Jermila's credibility had been undermined by certain
28 other evidence--an arrest for theft, an ambiguous diary entry, and participation in a scheme of

13

her mother's to steal money from an acquaintance. The court therefore held that "[a]n objection to [Jermila's] testimony that she had been threatened would have had no merit," and petitioner's "claim of ineffective assistance of counsel therefore fail[ed]." Id. at 8.

The California Court of Appeal's rejection of petitioner's claim was not an objectively unreasonable application of Strickland. See 28 U.S.C. § 2254(d). It simply cannot be said that a motion to exclude the testimony in question would have succeeded, much less that such a motion would have had the reasonably likely effect of altering the judgment. See Wilson, 185 F.3d at 990. Petitioner is not entitled to federal habeas relief on this claim.

### B. Failure To Conduct Independent DNA Testing

Petitioner claims that his defense was compromised by his counsel's failure to conduct independent DNA testing.

Respondent notes that petitioner's defense at trial was not that the DNA found on and inside the victim was not his own, but rather that his semen and saliva were deposited on the evening prior to the assault. In view of this defense, it would have made little sense for defense counsel to review independently the reliability of the DNA test performed by the prosecutor's scientist.

In a parenthetical remark in his traverse, petitioner makes reference to the question of how long his DNA could have remained on Jermila's body, suggesting perhaps that expert testimony to this effect would have supported his allegations of a prior consensual sexual encounter between himself and the victim. Petitioner's purely speculative claim is not a basis for relief. See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what an expert would have said is not enough to establish prejudice).

Nothing in the record suggests that a DNA expert would have testified that either (1) the DNA found on and inside the victim belonged to someone other than petitioner or (2) petitioner's DNA could have remained on Jermila's body from a prior consensual encounter. In contrast, the overwhelming body of other physical and testimonial evidence strongly points to petitioner's guilt. The victim's testimony, the inconsistency between petitioner's account and the testimony of his alibi witnesses, the presence of the victim's clothing at the

14

1  scene of the assault, the resemblance between her account and the assaults described by
2  petitioner's previous victim, and the forensic evidence actually in the record all contradict
3  petitioner's claim.  Scientific speculation does not give rise to a reasonable likelihood that
4  alternative behavior by trial counsel would have resulted in a different verdict.

5        Petitioner is not entitled to federal habeas relief on this claim.  The state courts'
6  rejection of the claim was not an objectively unreasonable application of Strickland.  See 28
7  U.S.C. § 2254(d)

### C. Failure To Produce And Examine Additional Alibi Witnesses

      Petitioner challenges his counsel's failure to put on "various witnesses" who could have placed him outside the area of the assault when it took place.  On a generous reading of the petition, those proposed witnesses include a certain Curtis McBride and "a gentleman named Wade."

      A habeas petitioner must set forth some evidence of the availability of uncalled witnesses and the content of their proposed testimony in order to show that his claim is anything other than speculative.  See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000).  No such support has been offered here.

      Trial counsel represented to the court that her team had tried and failed to locate Mr. McBride, but she did put on three alibi witnesses identified by the petitioner.  Only one of the three substantially supported petitioner's account of the evening's events, however.

      In view of the overwhelming evidence of petitioner's guilt, the speculative possibility that another alibi witness could have been found does not raise a reasonable inference that the trial's outcome would have been any different.  See Strickland, 466 U.S. at 694. Petitioner is not entitled to federal habeas relief on this claim.  See 28 U.S.C. § 2254(d).

### D. Failure To Obtain Surveillance Camera Footage

      Petitioner claims that video footage from a surveillance camera located in the store where the victim made a purchase immediately prior to the assault could have corroborated his account of his own whereabouts during the critical period between 11:30 p.m. and

15

midnight on the evening of the attack. However, he attaches no affidavit or other supporting evidence to show the existence or orientation of such a camera, or what, specifically, the camera footage would have shown. Petitioner is not entitled to federal habeas relief on such a speculative claim. See Dows, 211 F.3d at 486.

### E. Failure To Investigate And Correct Pre-Sentence Report

In wholly conclusory terms, petitioner complains that "[c]ounsel failed to investigate and correct the pre-sentence report filed by the probation department which reflected numerous errors." (Pet. at 17.) No errors are specified, and the court cannot conclude that any actual error occured with respect to the probation office's pre-sentence report. Petitioner is not entitled to federal habeas relief on a conclusory claim of ineffective assistance of counsel. See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) (conclusory allegations of ineffective assistance of counsel do not warrant relief).

### F. Failure To Conduct An Independent Investigation

In addition to the specific deficiencies discussed above, petitioner also claims in general fashion that his trial counsel made no independent investigation into the facts. Had she done so, he argues, a "plethora" of evidence would have become available. Among other things, he claims that "various witnesses" could have been called and the "nature of the physical evidence" would have exculpated him. These assertions are fatally nonspecific. Petitioner is not entitled to federal habeas relief on this claim. See id.

### G. Failure To Challenge Qualifications Of Prosecution Witness

Petitioner claims that his counsel was incompetent for failing to object to the qualifications of an emergency room nurse (Martin Moran) who examined the victim following the assault. The claim is without merit.

The trial transcript shows that counsel conducted a fairly extensive voir dire of Mr. Moran (RT at 753-56), and that, following voir dire, the court accepted Mr. Moran as an expert. (RT at 758.) The record further shows that Mr. Moran had considerable pertinent experience and training. Petitioner is not entitled to federal habeas relief on this claim. There is no indication whatsoever that any further attempt to exclude Moran's testimony

16

would have succeeded, or that the exclusion of his testimony would have altered the outcome of the trial. See Wilson, 185 F.3d at 990.

IV. **Ineffective Assistance of Appellate Counsel**

A. <u>Failure to Raise Additional Grounds For Reversal On Direct Appeal</u>

Petitioner's brief on direct appeal to the California Court of Appeal raised three issues. It challenged the trial court's admission of the third-party threat evidence discussed above, the admission of testimony concerning prior uncharged sex offenses, and the admission of three kitchen knives found in petitioner's home. In a reasoned opinion, the California Court of Appeal refused to disturb the judgment below. Petitioner claims that his appellate counsel either failed or refused to raise additional grounds for reversal, including the speedy trial, insufficient evidence, and ineffective assistance of trial counsel claims raised in the present proceeding.

Claims of ineffective assistance of appellate counsel are reviewed under the same Strickland standard applicable to claims of ineffective assistance of trial counsel. See Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). Petitioner must show that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, he would have prevailed on appeal. Id. In addition, appellate counsel does not have a duty to raise every nonfrivolous issue requested by the defendant. See Jones v. Barnes, 463 U.S. 645, 751-54 (1983); Miller, 882 F.2d at 1434 n.10. Indeed, the weeding out of weaker issues is regarded as one of the hallmarks of effective appellate advocacy. Id.

Petitioner's claim that appellate counsel was ineffective for failing to raise additional grounds on appeal is without merit because there is no reasonable probability that any of the additional grounds would have been meritorious on appeal. See id. As discussed earlier, the grounds are without merit. There is no showing of actual prejudice under Strickland.

B. <u>Tone Of The Appeals Brief</u>

Petitioner also claims that the appellate brief was "drafted in such a way as to give the impression that petitioner was guilty of the charged offenses." (Pet. at 27.) This Court has carefully reviewed the brief on direct appeal to the California Court of Appeal, as well as

1 appellate counsel's brief in support of a petition for review by the California Supreme Court. 2 Both briefs drafted by petitioner's appellate counsel include a "Statement of the Facts" which 3 rehearses the evidence given at trial. Appellate counsel divided this section into subsections 4 entitled "The Prosecution" (Ex. A attached to Reponse at 3-11), "The Defense" (Id. at 11-14) 5 and "Rebuttal" (Id. at 14.). With a few exceptions, the language in each of these subsections 6 summarizes the facts as presented in the respective stages of the trial below. Petitioner is 7 correct that some of the sentences in this section therefore appear to describe the facts as 8 envisioned by the prosecution. For example, appellate counsel wrote that "Appellant put a 9 knife against Jermila's lower right back and forced her across the street to a gate in a fence 10 around Prescott School." (Id. at 3.) Many other sentences in the "Prosecution" subsection of 11 the appeals brief (and petition for review) likewise seem to adopt the prosecution's account 12 of the facts.

13 Even if appellate counsel's choice to organize his fact section as he did detracted from 14 the vigor of his advocacy, several important considerations make clear that petitioner's claim 15 is without merit. First, the remainder of the brief contained carefully reasoned and 16 competently drafted legal arguments. The grounds for the appeal were a set of evidentiary 17 rulings, not the jury's findings of fact. Thus, as to the issues before the Court of Appeal, 18 petitioner received zealous and professional advocacy from his appellate counsel. Second, 19 this Court does not believe that the Court of Appeal would have become so confused by the 20 organization and grammar of the fact section as to have been biased in its review of 21 applicable law. That court's carefully-reasoned opinion supports this view. This Court is 22 satisfied that the state courts' rejection of petitioner's claim did not amount to an objectively 23 unreasonable application of Strickland. See 28 U.S.C. § 2254(d).

## **CONCLUSION**

25 For all of the foregoing reasons, the petition for a writ of habeas corpus is DENIED. 26 The clerk shall enter judgment in accordance with this order and close the file.

27 **IT IS SO ORDERED.**

28

1
2  Dated: November 14, 2006
3
　　　　　　　　　　　　　　　　　　　　　　CHARLES R. BREYER
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE